THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ROSARIO TORRES RIVERA, Defendant and Appellant.

No. CR-63-382.     Decided September 18, 1964.

*Francisco Vázquez Gutiérrez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: Appellant was convicted of a violation of § 8 of Act No. 141 of July 20, 1960 (Sess. Laws, p. 408) (operating a motor vehicle along a public highway under the influence of intoxicating liquor), and sentenced to serve 15 days in jail, his driver's license having been also suspended for a period of one year.

A policeman, the only witness produced by The People, testified, insofar as pertinent herein, that as a result of a complaint received they drove to the Patillas-San Lorenzo road and caught appellant operating a trailer. They detained him. In his account of defendant's condition, the policeman said the following:

"A. And he looked sleepy and did like this with his head. Then we asked him for his license and he did not have it in the right-hand side compartment.

Q. What license?

A. The driver's license, and we had a hard time getting him to produce his license. Since the trailer has a small ladder for climbing, we had to climb in order to find out what was wrong with him because it was quite high. Then, when he spoke, he smelled strongly of liquor and we could not understand what he was saying. Then . . .

Q. Did he speak there?

A. Yes, he spoke when I climbed.

Q. You say that you could not understand anything?

A. We could not understand anything. Then, finally he took out his license, and he was so drunk that we had to help him step down the ladder, a ladder which is . . .

MR. VÁZQUEZ:

Your Honor, the remark about being so drunk should be eliminated. That's the witness' conclusion.

THE JUDGE:

Eliminated.

Q. Proceed with the recital of the facts.

DISTRICT ATTORNEY:

Q. You had to help him, why did you have to help him?

A. To get him down from the trailer so he would not fall. Then we took him and put him in the jeep and took him to

headquarters, and there we took down his personal data and told him that if he . . .

Q. You took him on the trailer. Did defendant make any statement?

A. I asked him if he had been drinking much, and he said: 'Well, I have taken two or three flasks and have not slept the whole night.' That was what he told us. Then we took him to the health center and there I asked him if he was going to have the blood taken, and the first time he said no, but in the end he had the blood taken; Dr. Cuevas took out his blood.

Q. And he had trouble talking?

A. Talking; then, when we took him down, he could not hold himself up.

Q. He could not hold himself up.

A. And there in the health center we had to hold him also.

Q. Why?

A. Because he could not hold himself up." (Tr. Ev. 4–6.)

The result of the analysis of defendant's blood was presented in evidence by the defense and not by the district attorney. According to the analysis, there was eight (8) hundredths of one (1) percent, by weight of alcohol, in defendant's blood.

Appellant also offered in evidence a sworn statement given shortly after his detention to enable the judge to determine whether a person in the state of intoxication described by the policeman could sign as appellant did in that statement. He also offered his own testimony, according to which the previous night he took "some shots" and went to bed between twelve and half past twelve in the evening; that he got up at half past three in the morning and left Bayamón at half past four driving the trailer to Patillas; that between eight and nine in the morning, near Patillas, he took one beer for an upset stomach. He denied being in the state of intoxication described by the policeman, or that they helped him to hold himself up, and that he refused to have a blood sample taken. In the course of his testimony at

the trial, he said that he always spoke with difficulty, and that his eyes were always the same red color.

The following took place after the evidence of both parties was heard:

"THE JUDGE:

District Attorney. (The District Attorney argues.)

Will the defendant please rise. On the result of the evidence heard, the court finds you guilty and imposes 20 days in jail and suspends your license to drive motor vehicles . . .

MR. VÁZQUEZ:

Your Honor, we wish to move for reconsideration of that sentence. Your Honor, please take a look at that signature which appears there, which was written some time ago, a while ago. Do you believe that a person who signs like that is the person who, according to the policeman, cannot hold himself up?

THE JUDGE:

Colleague, if the court had believed the evidence in the sense that the defendant could not hold himself up, the sentence imposed would have been at least six months in jail, because a person who operates a vehicle of such potential hazard and importance as that which this defendant operated is bound to adopt extraordinary measures to guarantee the safety of others' lives and property, and what was established before this court was that this defendant went to bed between half past twelve and one in the morning after having been drinking, and the next day, at ten in the morning, having taken only one beer, shows a result of .08, which we all know is what one drink reduces approximately per hour. Now, imagine the condition of that man when he got on that vehicle at three in the morning, to operate at night that vehicle which was heavily loaded from Bayamón to Patillas. The result was not .08 but .25. What happens was that he was not caught until he got to Patillas." (Tr. Ev. 31–32.)

Section 5-801 of the "Vehicle and Traffic Law of Puerto Rico" (9 L.P.R.A. § 1041) provides that it shall be "unlawful for any person who is under the influence of intoxicating liquor to drive or operate any motor vehicle." That section also provides that the amount of alcohol in defend-

ant's blood at the time of the alleged violation, as shown by the chemical analysis of his blood, urine, or breath, shall give rise, among others, to the following presumption:

"(2) If there was at the time of the analysis in excess of five (5) hundredths of one (1) percent but less than fifteen (15) hundredths of one (1) percent by weight of alcohol in the defendant's blood, such fact shall not give rise to the presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered jointly with other competent evidence in determining the guilt or innocence of the defendant."

Since from the chemical analysis it appears that there were eight (8) hundredths of one (1) percent of alcohol by weight in defendant's blood, such evidence does not give rise to the presumption whether or not defendant was under the influence of intoxicating liquor at the time of the alleged violation. It would therefore be necessary to resort to other evidence offered by The People and consider it jointly with that of the chemical analysis, in order to determine defendant's guilt or innocence. That other evidence which consisted in the testimony of a policeman is not worthy of credit. That was the opinion of the trial judge. From the statements made by the judge in passing upon the motion for reconsideration made by the defendant, the inference is that his judgment of guilt was based on the amount of alcohol which he assumed was in defendant's blood when he left Bayamón, rather than what he had when he committed the alleged violation near the town of Patillas. He erred in so concluding. Considering the entire credible evidence, the same is insufficient to sustain a judgment of conviction.

For the reasons stated, the judgment on appeal will be reversed and another rendered acquitting the defendant.